# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JUSTIN CLAY MCNIELL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:16-CV-8142-VEH** |
| | ) | (5:14-CR-270-VEH-JHE) |
| **UNITED STATES OF** | ) | |
| **AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I. BACKGROUND AND PROCEDURAL HISTORY

On October 28, 2014, Justin Clay McNiell (hereinafter referred to as

"McNiell") pled guilty to one count (Count One) of having knowingly received

child pornography and material that contains child pornography, in violation of

Title 18, United States Code, Section 2252A(a)(2) and to one count (Count Two)

of having knowingly distributed child pornography and material that contains

child pornography, in violation of Title 18, United States Code, Section

2252A(a)(2). (Plea agreement at 1; Doc. 9 in *United States v. McNeill*, Case

Number 5:14-CR-270-VEH-JHE). In exchange, the Government agreed, at

sentencing, to move to dismiss one count (Count Three) of having knowingly

possessed and accessed with intent to view a computer laptop that contains an

image of child pornography, including an image that involved a prepubescent minor and a minor who had not attained 12 years of age, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2). (*Id*.).

On August 20, 2015, this Court sentenced McNiell to 240 months custody as to Counts One and Two separately and concurrently with 120 months of supervised release to follow.[1] (Judgment of Conviction, Doc. 34 in *United States v. McNeill*, Case Number 5:14-CR-270-VEH-JHE). The Court granted the Government's motion to dismiss Count Three. (*Id*.). McNiell did not appeal.

On August 15, 2016, McNiell filed a petition pursuant to 28 U.S.C. § 2255. (Doc. 1).[2] The Government has filed an Opposition (doc. 9). In its Opposition, the Government stated, inter alia, that the movant should be required to amend his petition. On June 6, 2017, this Court entered an Order agreeing that amendment was required. (Doc. 10). The Court stated:

> Specifically, movant is hereby **ORDERED** as follows:
>
> 1.   **IF** movant is raising any claim that his counsel was ineffective at the movant's sentencing as to any specific failure **not** addressed in the Government's response, he **MUST** file an

---

[1] The Government urged the court to impose a low-end guidelines sentence of 292 months custody followed by supervised release for life. Transcript of sentencing hearing, doc. 38, p. 10 at ll. 21-23 in Case 5:14-CR-270-VEH-JHE.

[2] Doc. 36 in Case 5:14-CR-270-VEH-JHE.

amended petition setting out with specificity "what Attorney Tewalt failed to object to" at sentencing that movant states Attorney Tewalt should have objected to. **Movant is hereby cautioned that any failure by him to amend as ordered in this paragraph 1 will be deemed a waiver of any alleged failure of Attorney Tewalt at sentencing other than those addressed in the Government's response.**

2.    Movant **MUST** file an amended petition setting out the specifics regarding his claim that Attorney Tewalt was ineffective in not filing a notice of appeal. Specifically, movant **MUST** state, in that amended petition:

a.    **When** movant asked Attorney Tewalt to file a notice of appeal (and, if on more than one occasion, the approximate times of each such request);

b.    **How** movant made each request specified in subparagraph a. above (in person, by mail, by telephone, or by any other means);

c.    **Where** movant and Attorney Tewalt where located at the time of each request specified in subparagraph a. above; and

d.    As to each request specified in subparagraph a. above, **what** aspect of the criminal proceeding (plea hearing, sentencing hearing, or other) movant wanted Attorney Tewalt to challenge by an appeal.

**Movant is hereby cautioned that any failure by him to amend as ordered in this paragraph 2 will be deemed a waiver of any claim based on the failure of Attorney Tewalt to file an appeal.**

The deadline for movant to file any amended petition is **July 10,**

**2017**.

(Doc. 10 at 1-3).

McNiell **DID NOT RESPOND**. Accordingly, he has waived:

1.      Any alleged failure of Attorney Tewalt at sentencing other than those
        addressed in the Government's opposition.

2.      Any claim based on the failure of Attorney Tewalt to file an appeal.

## II. ANALYSIS

### 1. Overview of Section 2255

Section 2255 enables a prisoner to challenge his sentence; however, there
are procedural limitations on a § 2255 motion. Procedural default is one of those
limitations. Generally, if a defendant does not raise an argument regarding his
sentence on direct appeal, then he may not seek collateral review of his sentence
by way of a § 2555 challenge. *See Massaro v. United States*, 538 U.S. 500,
504 (2003). "The procedural-default rule is neither a statutory nor a constitutional
requirement, but it is a doctrine adhered to by the courts to conserve judicial
resources and to respect the law's important interest in the finality of judgments."
(*Id*.). However, claims of ineffective assistance of counsel typically may be raised
by means of a § 2255 challenge even after an unsuccessful direct appeal. (*See id*.).
Indeed, such a challenge is generally "[t]he preferred means for deciding a claim

of ineffective assistance of counsel." *United States v. Patterson*, 595 F.3d 1324, 1328-29 (11th Cir.2010) (citing *Massaro v. United States*, 538 U.S. at 504).

## 2. Timeliness

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996, and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2255 providing for a one-year period of limitations within which federal prisoners must file their motions to vacate pursuant to 28 U.S.C. § 2255. *Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000), *cert. denied*, 531 U.S. 971 (2000).

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

McNiell makes no argument, and presents no facts, in favor of the court's application of subsections (2), (3), or (4) of § 2255(f). Thus, the timeliness of the pending motion is calculated under 2255(f)(1) based upon the date on which McNiell's judgment of conviction became final. In this case, the Judgment of Conviction was entered on August 20, 2015. McNiell did not appeal. Therefore, his conviction became final fourteen days later, on September 3, 2015, when the time in which he could appeal expired. FED. R. APP. P. 4(b)(1)(A)(i). Thus, the one-year statute of limitations ran on September 3, 2016, and the Petition itself, deemed filed August 15, 2016, is timely.

### 3. The *Strickland* Standard

To warrent relief, a claim of ineffective assistance of counsel must meet the two-pronged standard set out at *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, McNiell must show <u>both</u> (1) that counsel's performance was deficient and "fell below an objective standard of reasonableness"; <u>and</u> (2) that the deficient performance prejudiced the defendant. *Id*. at 687-88. Here, because the Court finds that McNiell has not shown prejudice, it need not examine or address counsel's performance.[3] *See Strickland v.*

---

[3] To be clear, the Court's omission of such discussion and analysis should not be read to indicate that counsel's performance was in fact deficient.

*Washington*, 466 U.S. at 697, 104 S. Ct. at 2069 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

### a. *McNiell was not prejudiced at the plea stage*

McNiell argues that his counsel was ineffective at the plea stage because his counsel "misled him into signing an open plea against his knowledge and wishes." (Doc. 1 at 2). McNiell further states that he "advised counsel that he was not interested in an open plea. Counsel then without petitioner's full knowledge, .... tricked him into signing an open plea agreement." (*Id.*). The Government has interpreted McNiell's reference to an "open" plea agreement as a plea agreement that is not made pursuant to FED. R. CRIM. P. 11(c)(1)(C). A plea agreement made pursuant to that Rule, if accepted by the Court, is binding upon the Court. However, McNiell has failed to allege that the Government was willing to offer a Rule 11 plea, that the Court was willing to accept one, or that he would have gone to trial if he had understood that the plea was "open." Each of such omissions is fatal to McNiell's claim. *See Hill v. Lockhart*, 474 U.S. 52, 60, 106 S. Ct. 366, 371, 88 L. Ed. 2d 203 (1985), (holding that Petitioner did not meet second prong

of *Strickland* test when "Petitioner did not allege ... that, had counsel correctly informed him about [claimed error], he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on [claimed error] in deciding whether or not to plead guilty.").

Further, in light of the language in the plea agreement itself, the Guilty Plea Advice of Rights form, and the colloquy between the Court and McNiell during his plea hearing, all of which are referenced at length and with specific citations to the record in the Government's Opposition, the Court finds that McNiell has wholly failed to show that he was in any ways misled as to the nature of the plea agreement (that is, that it was not binding on the Court). The Court particularly finds that McNiell's own statements to the Court during that hearing belie his assertions in his petition. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements [made under oath by a defendant] during the colloquy are true.").

All of these deficiencies apply equally to McNiell's claim that he was prejudiced by his attorney's alleged representation that he "would receive a five year sentence" (doc. 1 at 3) or that "the court would likely impose the five-year sentence." (*Id*.).

8

b. *McNiell was not prejudiced at the sentencing stage*

McNiell argues that his counsel was ineffective at the sentencing stage because he "fail[ed] to present mitigating factors which would have changed the outcome of the proceedings." (Doc. 1 at 3). Apparently those mitigating factors were "the result[s] of [McNiell's] psychosexual analysis test which demonstrate the [McNiell] was not a pedophile or a danger to the community," (*id.*), and the fact that McNiell "had been sexually abused as a child, and while [he] was housed in the detention facility" (*id*. at 4). However, McNiell overlooks the fact, while the Court did not have before it the results of McNiell's psychosexual analysis test, his history of being sexually abused as a child, beginning at age four, was set out in ¶ 94 of the Presentence Report, as was his report of having been sexually assaulted by other prisoners while he was in custody at the Cullman County, Alabama, Detention Center on the instant offenses. This Court adopted the factual statements contained in the presentence report, necessarily including the facts set out in ¶ 94. (Doc. 9-3 at 4, ll. 7-8). Thus, McNiell's argument is limited by the facts to merely guessing that, had his counsel presented to the Court <u>the results of his psychosexual analysis test</u>, this Court "would likely impose the five-year

[statutory minimum] sentence." (*Id*.).[4] However, nothing in the record supports this guess.

First, the Court points out that, at the sentencing hearing, McNiell stated that he had read and discussed the presentence investigation report with his attorney. (Doc. 9-3 at 3, ll. 20-22). The Court then advised him that "Any facts that are in the presentence investigation report that are not objected to before your sentence is imposed are considered to have been proven or established for purposes of determining what is an appropriate sentence in this case. Do you have any objections to any of the content of the presentence investigation report?" (*Id*. at 3, l. 23 - 4, l. 3). McNiell responded, "No ma'am, Your Honor." (*Id*. at 4, l. 4). Significantly, McNiell did not tell the Court that the presentence report was incomplete in any manner, much less that it was incomplete because it did not include the results of his psychosexual analysis test.

Additionally, at the sentencing hearing, McNiell's attorney asked the Court to vary downward from the advisory guideline range based on the sexual abuse that McNiell suffered from a "very early age, as indicated in the PSR. And throughout his adolescent and teenage years...." (*Id*. at 6, ll. 23-24). McNiell's

---

[4] McNiell also ignores the fact that, while he was sentenced to the statutory maximum for each of Counts One and Two, the Court chose to run his sentences <u>concurrently</u> rather than consecutively.

attorney also pointed out that, despite that abuse, as an adult, McNiell was "engaged at the time of his arrest and for months prior to that in a health adult relationship and not seeking any type of interaction with children." (*Id*. at 7, ll. 6-8). McNiell's attorney argued that McNiell's interest in child pornography was an effort to "feel normal about what had happened to him in his life" (*id*. at 7, ll. 9-10), and was "not for the purpose of trying to seek children out and molest them, but to try and make [himself] feel less guilty and less culpable for what was actually done to [him]" (*id*. at 7, ll. 17-20). He further argued that "McNiell was doing the best he could under the circumstances of his life to try and adjust to normalcy of life without trying to injure anybody else in the process." (*Id*. at 8, ll. 13-16). He argued that a variance was appropriate because Congress, in addressing the child pornography guidelines, "want[ed] people to not look at child pornography as it could lead towards other actions and creation of child pornography and abuse against children" (*id*. at 8, ll. 20-22), but that "there is not indication in this case factual basis or this case history that Mr. McNeill [sic] was or was going to ever be a threat to children. Again, he was in a healthy adult relationship while in possession of these pictures to try and make himself feel less culpable about what had been done to him as a child." (*Id*. at 8, l. 24 - 9, l. 4). McNiell's attorney also pointed out McNiell's ongoing vulnerability to sexual

assault by others, telling the Court that vulnerability was "indicated by the fact that while [McNiell] was in custody in Cullman County, he was assaulted there. He has since been transferred to other facilities and the marshals have been taking very careful care of him to ensure his safety, but he is still one of those individuals that will be taken advantage of by others with more nefarious purposes." (*Id*. at 6, l. 25 - 7, l. 6). In closing, McNiell's attorney urged the court to vary because "[McNiell is] probably one of the nicest, softest, most docile individuals [his counsel had] ever met. And yet, he was taken advantage of by monsters and just wanted to feel normal. That's why he did what he did, and I believe that is worthy of a variance in this case, Your Honor." (*Id*. at 9, l. 24 - 10, l. 3).[5]

Prior to the sentencing hearing, McNiell's attorney filed a combined sentencing memorandum and motion for a downward variance to a the statutory minimum sentence of 60 months. At the sentencing hearing, his counsel urged the court to vary to that sentence. McNiell has provided no particularized criticism of his counsel's performance at sentencing, other than his failure to provide the Court with a copy of the results of his psychosexual test.[6]

---

[5] During allocation, McNiell also told the Court these facts.

[6] McNiell also asserts that his counsel failed to present to the Court mitigating factors, specifically, that he had been sexually abused as a child and while detained in this case. However, the Court has already shown that: (1) this information was in the Presentence Report;

McNiell has wholly failed to show that such failure by his counsel arose to the level of a Constitutional deficiency. Additionally, given all the information that was provided to the Court through the PSR, defense counsel at the sentencing hearing, and by McNiell himself at that hearing, McNiell has failed to explain how a copy of the test results would have resulted in this Court imposing a lower sentence. Accordingly, he has also failed to show prejudice from such omission.

## IV. CONCLUSIONS AND ORDER

For the reasons set out above, the undersigned finds that all of McNiell's ineffective assistance claims lack merit. The Court specifically finds there is no need for an evidentiary hearing. Any of McNiell's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 filed by Justin Clay McNiell (Doc. 1) is **DENIED**.

2. This case is **DISMISSED** with prejudice.

3. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

_____

(2) counsel also spoke to the Court at the sentencing hearing about this information and urged the Court to vary in consideration of it; and (3) McNiell himself told the Court about these facts during allocution.

4. A certified copy of this Order and the judgment shall also be filed in criminal case number 5:14-cr-270-VEH-JHE.

5. The Clerk of the Court is directed to terminate the § 2255 motion (Criminal Case Doc. 36) filed in criminal case number 5:14-cr-270-VEH-JHE.

**DONE** and **ORDERED** this the 30th day of November, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge